Filed 1/30/26  P. v. Ordonez CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br><br>    v.<br><br>ABINAEL ORDONEZ,<br><br>    Defendant and Appellant. | B338103<br><br><br>(Los Angeles County<br>Super. Ct. No. VA161237) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra A. Cole, Judge.  Affirmed.

Courtney Reed, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Blake Armstrong, Deputy Attorneys General, for Plaintiff and Respondent.

Abinael Ordoñez appeals from his conviction for assault on a peace officer and resisting an officer. He contends the prosecutor committed

misconduct during his closing argument by commenting on appellant's failure to testify, thereby violating his constitutional rights and shifting the burden of proof to the defense. We conclude that appellant has forfeited this argument and, if we were to reach the merits, the comments at issue did not constitute prejudicial error. We therefore affirm the judgment.

## PROCEDURAL HISTORY

On October 4, 2023, appellant was charged by information with criminal threats against Santiago E.[1] (Pen. Code, § 422, subd. (a)[2]; count one), assault on peace officer Shane Connolly (§ 245, subd. (c); count two), and resisting officer Connolly (§ 69; count three).  The information also alleged as factors in aggravation that the offenses involved a threat of great bodily harm (Cal. Rules of Court, rule 4.421(a)(1)) and that appellant was armed with and used a weapon (Cal. Rules of Court, rule 4.421(a)(2)).  The court subsequently granted the People's motion to dismiss count one.

The jury trial began on February 20, 2024.  On February 22, 2024, the jury found appellant guilty of counts two and three.  After appellant agreed to a court trial on the factors alleged in aggravation, the court found true that the crime involved a threat of great bodily harm.  (Cal. Rules of Court, rule 4.421(a)(1).)

The court sentenced appellant to the low term of three years in prison on count two. The court imposed a 16-month term on count three but stayed it pursuant to section 654.  The court declined to rely on the aggravating factor in sentencing and took into consideration as a  mitigating factor evidence regarding appellant's mental health issues.

Appellant timely appealed.

---

[1]     We refer to civilian victims and witnesses using their first name and last initial to protect their privacy. (See Cal. Rules of Court, rule 8.90(b)(4), (b)(10).)

[2]     All further statutory references are to the Penal Code unless otherwise indicated.

# FACTUAL BACKGROUND

## I.  Prosecution Evidence

Santiago E. testified at trial that he rented a residence to appellant and his family seven or eight years ago. Santiago lived on the property and rented out a duplex behind his home.  Appellant stopped living there about two years before the incident, but continued to visit the property to see his wife and children.

On the evening of August 13, 2023, Santiago arrived at the property and saw appellant standing outside. He told appellant to leave because appellant had damaged the property the previous week.  Appellant became aggressive, hitting the ground with a pipe and saying, "I'm going to break your skull."  Santiago pulled his truck through his gate, which closed behind him.  His daughter called the sheriff's department.  Santiago stayed in his truck for about 20 minutes until sheriff's deputies arrived.  The prosecution played video of these events from Santiago's surveillance cameras for the jury.

Joseph Blair and Shane Connolly, deputies from the Los Angeles County Sheriff's Department, testified that they responded to a disturbance call at the property around 8:00 p.m. on August 13, 2023.  The deputies were in a marked patrol car and wearing their uniforms.  They saw appellant on the sidewalk, holding a metal pipe approximately four feet long.  Blair testified that appellant "seemed assaultive" and was waving the pipe around.  Connolly testified that appellant was swinging the pipe and hitting it on the ground.  Appellant was yelling in Spanish, which neither deputy could understand.  Connolly told appellant in English to drop the pipe. Appellant did not comply; instead he began running away, hitting the ground, fences, and light posts with the pipe.

The deputies spoke with Santiago to confirm his report, then called additional units to help keep an eye on appellant, who was about 25 to 30 yards away.  Connolly again told appellant to put the pole down and stop, but he continued swinging the pole and hitting it on the sidewalk.  As appellant moved away from them, he continued to look in their direction. The deputies began to follow him in their vehicle.

Connolly tried to use his taser on appellant to apprehend him, but the device appeared to have no effect. Connolly continued to tell appellant to put the pole down, but appellant did not comply. As he was running away, appellant stumbled and fell. As Connolly approached, appellant swung the pole at his head, hitting Connolly in the shoulder. Connolly and another deputy managed to disarm appellant and began to try to use control holds to get his hands behind his back, while telling appellant to comply. According to Blair, appellant was on the ground with five deputies on top of him and attempting to restrain him. The deputies told appellant to stop resisting and allow himself to be handcuffed, but appellant continued to struggle and resist putting his hands behind his back.

Connolly also punched appellant in the face. Appellant continued to struggle and kick, at one point grabbing Connolly's genitals. Connolly deployed his taser twice more while appellant was on the ground. Eventually the deputies were able to place appellant on his stomach and handcuff him. Appellant was sent to the hospital for evaluation. The prosecution played footage of the incident from Connolly's body-worn camera.

## II.    Defense Evidence

Appellant did not testify in his defense and presented no other witnesses.

## III.    Closing Argument

The trial court instructed the jury with a modified version of CALCRIM No. 860 that to establish assault on a peace officer, the prosecution must prove, among other elements, that "[t]he defendant did not act in self-defense." During closing argument the prosecutor discussed the element of self-defense, stating, "Defendant did not act in self-defense. Nothing even to consider here. There's no testimony presented, no evidence presented that there was – defendant was acting in self-defense. Not an issue." In her closing argument, defense counsel argued that appellant did not act with the requisite intent and that the deputies used excessive force to subdue appellant, who was therefore entitled to use reasonable force to defend himself.

4

**DISCUSSION**

Appellant contends the prosecutor's reference during closing argument to the absence of evidence of self-defense was an indirect comment on appellant's failure to testify, thereby violating his Fifth Amendment rights under *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*). He further argues that this comment effectively shifted the burden of proof to the defense. We are not persuaded.

**I.      Forfeiture**

As an initial matter, respondent contends that appellant has forfeited his claims of error because he failed to object to the prosecutor's remarks during trial.  In order to preserve a claim of *Griffin* error on appeal, a defendant must make a timely objection on that ground and request a jury admonition to cure any erroneous statement by the prosecutor.  (*People v. Jones* (2003) 29 Cal.4th 1229, 1262; see also *People v. Bonilla* (2007) 41 Cal.4th 313, 336 ["To preserve a claim of prosecutorial misconduct during argument, a defendant must contemporaneously object and seek a jury admonition."].)  Appellant did not object below and has therefore forfeited his claims of *Griffin* error and improper burden shifting.

Appellant does not dispute that he failed to object during trial. However, he contends that any forfeiture was a result of ineffective assistance of counsel.  To establish ineffective assistance of counsel, a defendant must show, by a preponderance of the evidence, that "'(1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant.'" (*People v. Johnson* (2015) 60 Cal.4th 966, 980; see also *Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*).)

To establish deficient performance, a defendant must show that counsel's representation was objectively unreasonable "under prevailing professional norms." (*Strickland, supra,* 466 U.S. at p. 688.) Unless the defendant establishes otherwise, we presume that "counsel's performance fell

within the wide range of professional competence and that counsel's actions and inactions can be explained as a matter of sound trial strategy." (*People v. Carter* (2003) 30 Cal.4th 1166, 1211.) Further, if the record "'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.'" (*People v. Ledesma* (2006) 39 Cal.4th 641, 745-746.)

The record here is silent as to defense counsel's reasons for not objecting to the prosecutor's remarks. Thus, appellant must establish that there could be no satisfactory explanation for this failure. He cannot make this showing. Defense counsel may well have believed that the brief statement was not objectionable as a comment on the state of the evidence (see, e.g., *People v. Bradford* (1997) 15 Cal.4th 1229, 1339 [*Griffin* does not "extend to bar prosecution comments based upon the state of the evidence or upon the failure of the defense to introduce material evidence"]), or decided as a matter of strategy not to call further attention to the statement (see, e.g., *People v. Johnson, supra,* 60 Cal.4th at p. 980 ["Deciding whether to object to a judge is inherently tactical."]). As such, appellant has not established that his counsel's failure to object was unreasonable.

Appellant also cannot establish that any deficiency was prejudicial. The jury was instructed with CALCRIM No. 355 that appellant had a constitutional right not to testify and it could not consider his decision not to testify "for any reason at all." The jury was also instructed with CALCRIM No. 220 that the prosecution bore the burden of proving beyond a reasonable doubt that defendant committed the charged crimes and with CALCRIM No. 222 that statements by the prosecutor are not evidence. We presume the jurors followed the jury instructions. (*People v. Boyette* (2002) 29 Cal.4th 381, 453.) Furthermore, had the trial court sustained an objection on the basis of *Griffin*, the court likely would have admonished the jury with similar instructions. Given the strength of the evidence against appellant, including video footage, and the brief, indirect nature of the *Griffin* error alleged, "which did not involve any direct comment on the defendant's failure to testify," we are not convinced it is reasonably probable the jury would have

6

reached an outcome more favorable to defendant had trial counsel objected. (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1011.)

## II.    *Griffin* **Error**

Even if appellant had not waived this contention, he has not demonstrated error. "The Fifth Amendment prohibits a prosecutor from commenting, directly or indirectly, on a defendant's decision not to testify on his own behalf." (*People v. Taylor* (2010) 48 Cal.4th 574, 632–633 (*Taylor*), citing *Griffin*, *supra*, 380 U.S. at p. 613.) "Directing a jury's attention to a defendant's failure to testify at trial runs the risk of inviting the jury to consider the defendant's silence as evidence of guilt." (*People v. Lewis* (2001) 25 Cal.4th 610, 670 (*Lewis*).)

A prosecutor is generally allowed to comment on the state of the evidence, or the defendant's failure to introduce material evidence available to him or to call anticipated witnesses, without committing a *Griffin* error. (*Lewis, supra*, 25 Cal.4th at p. 670 [no *Griffin* error in prosecutor's argument that evidence of mitigating circumstances "does not exist"]; *People v. Bradford* (1997) 15 Cal.4th 1229, 1339 (*Bradford*).) In *Taylor*, s*upra*, for example, the defense counsel argued that the evidence did not support a finding that defendant entered the victim's home with the specific intent to commit the charged crimes. In rebuttal, the prosecutor asked, "Who took this stand and gave you a reasonable explanation as to another reason that the defendant may have been there?" and later stated that there was "no reasonable explanation." (*Taylor, supra,* 48 Cal.4th at p. 632.) The Supreme Court rejected the defendant's claim of *Griffin* error, concluding, "In context, the prosecutor's query was a proper comment on the evidence against defendant, not an implicit suggestion that defendant should have, or could have, provided a nonfelonious reason for his initial entry into the victim's home." (*Id*. at p. 633.) Similarly, here, the prosecutor's statement that there was "no testimony" and "no evidence" that appellant was acting in self-defense was a proper comment on the evidence in general and the elements the prosecution needed to prove to establish assault.  The prosecutor made no reference to appellant or implied that he should have testified to support a claim of self-defense.

Appellant contends that only he could have provided evidence that he acted in self-defense, thus the prosecutor's statement that there was no evidence was an indirect commentary on his failure to testify. "Pursuant to *Griffin*, it is error for a prosecutor to state that certain evidence is uncontradicted or unrefuted when that evidence could not be contradicted or refuted by anyone other than the defendant testifying on his or her own behalf." (*People v. Hughes* (2002) 27 Cal.4th 287, 371 (*Hughes*).) This application of *Griffin* does not apply as broadly as appellant urges. For example, in *Hughes*, the defendant cited to multiple comments by the prosecutor, including "'[t]he defense has called no witness that could testify that this is what [defendant] drank or how much he drank.'" (*Id.* at p. 373.) The Supreme Court found no error, explaining that "we read the prosecutor's statements as a comment on the general state of the evidence, rather than an assertion that the prosecution's evidence was not contradicted by defendant personally." (*Ibid.*) Similarly, in *Bradford, supra*, 15 Cal.4th at p. 1338, the prosecutor commented on the absence of defense evidence, including that "'there is no evidence to the contrary'" regarding the defendant's motive for the killing. The Supreme Court rejected the defendant's claim of *Griffin* error, finding that the prosecutor "did not allude to the lack of refutation or denial by the sole remaining witness, defendant, but rather to the lack of *evidence*, which might have been presented in the form of physical evidence or testimony other than that of defendant." (*Id.* at p. 1340.)

By contrast, courts have found *Griffin* error where the prosecutor makes a "bare assertion that appellant, who knew the facts, had failed to come forward." (*People v. Denard* (2015) 242 Cal.App.4th 1012, 1021 [error to state that "defendant clearly does not want to take responsibility for his actions"]; see also *People v. Vargas* (1973) 9 Cal.3d 470, 474 [error to state that "there is no denial at all that [defendants] were there" because "'denial' connotes a personal response by the accused himself"].) There is no similar error here. The prosecutor commented on the defense's failure to produce *any* evidence to support a claim of self-defense or to counter the prosecution evidence that when appellant assaulted Connolly, he knew or should have known that Connolly was a peace officer lawfully performing his duties. Defense counsel, in turn, argued that the evidence showed the deputies

acting with excessive force and therefore supported appellant's self-defense claim. Under these circumstances, there is no reasonable likelihood the jury understood the prosecutor's remarks as an invitation to draw an improper inference of guilt from appellant's decision not to testify.

Even if the prosecutor's statements had been improper, the error was harmless. Indirect, brief, and mild references to a defendant's failure to testify that do not suggest that the jury draw an inference of guilt therefrom are uniformly held to constitute harmless error. (*People v. Hovey* (1988) 44 Cal.3d 543, 572.) The prosector's statements fall within this category. Accordingly, any *Griffin* error was harmless beyond a reasonable doubt. (See *People v. Cunningham* (2001) 25 Cal.4th 926, 994; *Chapman v. California* (1967) 386 U.S. 18, 24.)

## III.   Burden Shifting

Relying on the same statement made by the prosecutor, appellant also contends the prosecutor committed misconduct by shifting the burden of proof in violation of his rights under the Fourteenth Amendment. Even if we reached the merits of this claim, we would find no misconduct.

"Comments on the state of the evidence or on the defense's failure to call logical witnesses, introduce material evidence, or rebut the People's case are generally permissible. However, a prosecutor may not suggest that 'a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence.'" (*People v. Woods* (2006) 146 Cal.App.4th 106, 112.) The prosecutor's comments here properly addressed the state of the evidence. There was no suggestion that appellant had the burden to produce any evidence. "A distinction clearly exists between the permissible comment that a defendant has not produced any evidence, and on the other hand an improper statement that a defendant has a duty or burden to produce evidence, or a duty or burden to prove his or her innocence." (*Bradford, supra*, 15 Cal.4th at p. 1340.) In the context of the closing arguments as a whole, there is no reasonable likelihood that the jury interpreted the prosecutor's brief statements in a manner that shifted the burden of proof to the defense.

# DISPOSITION

The judgment is affirmed.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COLLINS, J.

We concur:

ZUKIN, P. J.

TAMZARIAN, J.